Dear Mr. Brady:
On behalf of the Lauderdale Lakes City Commission, you ask substantially the following question:
May the Lauderdale Lakes City Charter be amended by ordinance to change the date of the organizational meeting of the city commission?
According to your letter, the City of Lauderdale Lakes was incorporated in 1961 by Chapter 61-2386, Laws of Florida.[1] Section 3.09 of the city charter provides for an organizational meeting in March at which time a vice-mayor is selected. You state that in 2004, the charter was amended by the electorate changing the date of the election to November to coincide with the national election. Section 3.09, however, was not amended. You indicate that the city would like to align its organizational meeting at which time a vice-mayor is selected with its election schedule. Such organizational meetings would be held yearly although elections occur only every other year. You, therefore, ask whether the provisions of this charter provision may be amended by ordinance.
You refer to section 166.021(5), Florida Statutes, which provides that "[a]ll existing special acts pertaining exclusively to the power or jurisdiction of a particular municipality except as otherwise provided in subsection (4) shall become an ordinance of that municipality on the effective date of this act, subject to modification or repeal as other ordinances." Section 166.021(4), Florida Statutes, provides in part:
"It is the further intent of the Legislature to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the constitution, general or special law, or county charter and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those so expressly prohibited. However, nothing in this act shall be construed to permit any changes in a special law or municipal charter which affect the exercise of extraterritorial powers or which affect an area which includes lands within and without a municipality or any changes in a special law or municipal charter which affect the creation or existence of a municipality, the terms of elected officers and the manner of their election except for the selection of election dates and qualifying periods for candidates and for changes in terms of office necessitated by such changes in election dates, the distribution of powers among elected officers, matters prescribed by the charter relating to appointive boards, any change in the form of government, or any rights of municipal employees, without approval by referendum of the electors as provided in s. 166.031. Any other limitation of power upon any municipality contained in any municipal charter enacted or adopted prior to July 1, 1973, is hereby nullified and repealed."
Article VIII, section 2(a), Florida Constitution, provides that municipal charters may be amended pursuant to general or special law. The Florida Legislature, with the 1973 adoption of the Municipal Home Rule Powers Act, Chapter 166, Florida Statutes, granted municipalities broad home rule powers. In order to implement such a grant, sections166.021(4) and (5), Florida Statutes, repealed or converted into ordinances many of the provisions of municipal charters in existence at that time. Thus, municipal charter provisions adopted prior to 1973 that do not affect the enumerated areas set forth in section 166.021(4) were either repealed or converted into ordinances and are subject to modification or repeal as are other ordinances.
This office, however, has consistently concluded that charters or charter provisions adopted or readopted subsequent to the adoption of the Municipal Home Rule Powers Act in 1973 must comply with the procedures set forth in section 166.031, Florida Statutes.[2] That statute sets forth the procedures to be observed in amending municipal charters, including a requirement that a proposed amendment shall be subject to approval by referendum of the voters.[3]
For example, in Attorney General Opinion 75-223, this office specifically advised the City of Tamarac that its charter, readopted after 1973, could not be amended except as provided in section 166.031. Similarly, in Attorney General Opinion 79-80, this office stated that the Lake Wales City Commission could not unilaterally amend its municipal charter but could only propose an amendment that would be submitted to the municipal electors for their approval at a referendum held for that purpose. More recently, this office in Attorney General Opinion 01-15 stated that a city commission may amend its city charter, adopted in 1977, to remove a requirement that the city manager reside within the city only if such amendment is approved by referendum of the qualified electors of the municipality.
You have advised this office that while the original charter for the City of Lauderdale Lakes was enacted by special act in 1961, the charter of the City of Lauderdale Lakes has been readopted by the electorate since the creation of home rule powers for municipalities in 1973.[4]
Thus, the provisions of section 166.021(5), Florida Statutes, would not appear to be applicable.
However, as noted above, section 166.021(4), Florida Statutes, provides in pertinent part:
"[N]othing in this act shall be construed to permit any changes in a. . . . municipal charter which affect . . the terms of elected officers and the manner of their election except for the selection ofelection dates and qualifying periods for candidates and for changes interms of office necessitated by such changes in election dates . . . without approval by referendum of the electors as provided in s. 166.031." (e.s.)
In addition, section 100.3605(2), Florida Statutes, provides that the governing body of a municipality may, by ordinance, "change the dates for qualifying and for the election of members of the governing body of the municipality and provide for the orderly transition of officeresulting from such date changes."[5] (e.s.) The above provisions were added by Chapter 95-178, Laws of Florida.
In Attorney General Opinion 00-61, this office stated that an examination of the legislative history of the 1995 legislation indicated an intent that municipalities would be authorized to amend their charters to change the election dates and qualifying periods for candidates, including any changes in terms of office necessitated by such amendment, without a referendum.[6] The title for Chapter 95-178, Laws of Florida, states in pertinent part:
"An act relating to municipal elections; amending s. 166.021, F.S.; authorizing amendment of a special law or municipal charter for the purpose of changing election dates and qualifying periods for candidates, including any changes in terms of office necessitated thereby, without referendum; creating s. 100.3605, F.S.; . . . providing for change of qualifying periods and election dates by ordinance and for the orderly transition of office; providing an effective date."[7]
The title reflects an intent of the Legislature to permit municipalities to amend their charter to change the election dates and qualifying periods for candidates, including any changes in terms of office necessitated thereby, without referendum. Such an intent would appear to include those matters in the charter required for the orderly transition of office resulting from such election date changes. The date of the organizational meeting at which the vice-mayor is selected would appear to be one such change. It should be noted, however, that only the date, and the corresponding change in the term in office of the vice-mayor necessitated by that change may be amended by ordinance. Any other change to section 3.09 of the charter would require approval by the electorate.[8]
Accordingly, I am of the opinion that the Lauderdale Lakes City Charter may be amended by ordinance to change the date of the yearly organizational meeting at which the vice-mayor is selected; however, any other change to the charter relating to the organizational meeting would require approval by the electorate.
Sincerely,
 Bill McCollum Attorney General
BM/tjw
[1] Chapter 61-2386, Laws of Fla., was amended several times. See,e.g., Chs. 63-1128, 63-1528, 63-1530, 65-1808, 65-1809, 65-1810, 65-1811, and 67-1625, Laws of Fla.
[2] See Ops. Att'y Gen. Fla. 03-52 (2003), 03-36 (2003), 01-43 (2001), and 75-223 (1975).See also Op. Att'y Gen. Fla. 88-30 (1988) (charter amendment provisions in s. 166.031, Fla. Stat., prevail over conflicting provisions in a municipal charter) and Op. Att'y Gen. Fla. 97-53 (1997) (city commission may not delegate its canvassing board duties to a consolidated municipal canvassing board, absent an existing charter provision authorizing such a transfer or an amendment to the city's charter approved in a referendum by the city's electorate).
[3] See s. 166.031(1), Fla. Stat., providing that the governing body of the municipality "shall place the proposed amendment contained in the ordinance or petition to a vote of the electors at the next general election held within the municipality or at a special election called for such purpose." But see s. 166.031(5), Fla. Stat., stating that a municipality may, by unanimous vote of the governing body, abolish municipal departments provided for in the municipal charter and amend provisions or language out of the charter which has been judicially construed, either by judgment or by binding legal precedent from a decision of a court of last resort, to be contrary to either the State Constitution or Federal Constitution.
[4] According to Municipal Code Corporation, the current Charter of the City of Lauderdale Lakes, was adopted by Ordinance No. 604, and ratified by the electorate on March 13, 1979. Seehttp://www.municode.com/Resources/gateway.asp?pid=19971 sid=9.
[5] And see s. 100.3605(1), Fla. Stat., stating that the Florida Election Code, Chapters 97-106, Florida Statutes, govern the conduct of a municipality's election in the absence of an applicable special act, charter, or ordinance provision and that "[n]o charter or ordinance provision shall be adopted which conflicts with or exempts a municipality from any provision in the Florida Election Code that expressly applies to municipalities."
[6] See House of Representatives Committee on Ethics and Elections Final Bill Analysis Economic Impact Statement on HB 2209 (passed by the Legislature as Ch. 95-178, Laws of Florida), dated May 10, 1995, stating:
"HB 2209 authorizes amendment of a municipal charter or special act without referendum for the purpose of changing municipal election dates and qualifying period for candidates and for the adjustment of terms of office necessitated by such date changes. . . ."
[7] See, e.g., Parker v. State, 406 So. 2d 1089 (Fla. 1981) (one indicator of legislature's intent is the title of the law enacting the statute); Carlile v. Game and Fresh Water Commission, 354 So. 2d 362,365 (Fla. 1977) (reference to the title of a legislative act is appropriate in determining legislative intent).
[8] Cf. Op. Att'y Gen. Fla. 05-57 (2005) stating that a municipality may not amend its charter by ordinance to change the date of the organizational meeting of the newly elected city council, absent referendum approval. The proposed change to the date of the organizational meeting, however, was not the result of any change in the election date of the city council members as contemplated by s.166.021(4), Fla. Stat.